**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stacy Lynn Humphreys, et al., <br><br> Plaintiffs, <br><br> v. <br><br> City of Coolidge, et al., <br><br> Defendants. | No. CV-17-04045-PHX-DWL <br><br> **ORDER** |

Pending before the Court are (1) Defendants' partial motion to dismiss under Rule 12(b)(6) (Doc. 57) and (2) the parties' joint motion to stay discovery and disclosure (Doc. 71). As explained below, the motion to dismiss will be granted in part and denied in part and the motion to stay will be denied as moot.

## BACKGROUND

The sprawling amended complaint in this case is 70 pages long and contains more than 500 paragraphs. (Doc. 55.) In a nutshell, the plaintiffs—Stacy Lynn Humphreys and James Edward Smith III, a husband and wife, and two of Humphreys' businesses, Jugs & Strokers, LLC and Mama Jugs, LLC (collectively, "Plaintiffs")—contend they have been subjected to harassment by the City of Coolidge's ("City") police department due to their support for Outlaw Motorcycle Gangs ("OMGs"). Among other things, Plaintiffs contend that members of the City's police department improperly monitored their Facebook and other social media accounts, falsely told other law enforcement officers that criminal activity was occurring at their businesses, harassed their customers through heightened

police surveillance and patrols, and refused to comply with requests under Arizona's public records laws.

Based on these allegations, the complaint asserts the following eleven claims for relief: (1) violations of the First Amendment; (2) violations of the Fourteenth Amendment; (3) violations of the Criminal Intelligence Systems Operating Policies, 28 CFR § 23.20; (4) violations of 18 U.S.C. § 1951 (Hobbs Act); (5) violations of 18 U.S.C. § 1961 *et seq.* (RICO); (6) violations of 42 U.S.C. § 1985 ("Conspiracy With Civil Rights"); (7) violations of "18 U.S.C. § 1983"; (8) violations of A.R.S. titles 39 and 42 (Arizona's public records laws); (9) tortious interference with business expectancy; (10) tortious interference with contract; and (11) conspiracy to commit tortious interference.

On April 16, 2018, Defendants filed a partial motion to dismiss. (Doc. 57.) It asks the Court to dismiss Claims 1, 2, 3, 4, and 5 in their entirety and to dismiss Claim 7 as to one defendant (the City) and one plaintiff (Smith). On June 11, 2018, after the motion was fully briefed, the Court heard oral argument. (Doc. 65.) However, before a decision could be issued, this matter was reassigned to a new judge. (Doc. 69.)[1]

On December 11, 2018, the parties filed a joint motion to stay discovery and disclosures (Doc. 71) while the motion to dismiss was pending.

**DISCUSSION**

I. <u>Motion to Dismiss</u>

    A. **Legal Standard**

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded

---

[1] The Court reviewed the transcript of the oral argument (Doc. 72) before issuing this order.

allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

B. **Analysis**

1. Claims One and Two (First and Fourteenth Amendments)

In Claim One of the complaint, Plaintiffs allege that Defendants violated their free speech and free association rights under the First Amendment. (Doc. 55 ¶¶ 316-328.) In Claim Two, Plaintiffs allege that Defendants violated their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. (Id. ¶¶ 329-356.)

Defendants argue that Claims One and Two must be dismissed because the First and Fourteenth Amendments don't create a private right of action. (Doc. 57 at 5.) Defendants contend that 42 U.S.C. § 1983 is the vehicle by which to assert violations of constitutional rights, yet Plaintiffs haven't specifically pleaded their First and Fourteenth Amendment claims through § 1983. (*Id.*) In their response, Plaintiffs agree that § 1983 is the proper vehicle for asserting such claims and thus request leave to amend "[t]o the extent th[e] Court finds that violations of Plaintiffs' Constitutional rights were inappropriately pled." (Doc. 61 at 7-8.)

Dismissal is not warranted on this basis. To be sure, § 1983 is the proper vehicle to assert First and Fourteenth Amendment-based constitutional claims. *Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002) ("Section 1983 . . . allows individuals to enforce rights contained in the United States Constitution . . . ."). However, to survive dismissal, Plaintiffs weren't required to specifically invoke § 1983 in the paragraphs of the complaint discussing Claims One and Two. In *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014), the Supreme Court encountered a similar issue. There, the district court rejected a civil rights lawsuit, which alleged that certain public officials in Mississippi had engaged in Fourteenth Amendment violations, due to the plaintiffs' "failure to invoke 42 U.S.C. § 1983 in their

complaint." *Id.* at 346. The Supreme Court summarily reversed, emphasizing that the "[f]ederal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* (citation omitted). The Court added that a plaintiff need only "plead facts sufficient to show that her claim has substantive plausibility" and is "required to do no more to stave off threshold dismissal for want of an adequate statement of [her] claim." *Id.* at 347. *See also Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations. . . . [T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.").

The Court will note that Defendants also assert, in conclusory fashion, that Claims One and Two are subject to dismissal because they "are not legally cognizable claims or are implausible such that those claims are fatally flawed and ought to be dismissed pursuant to Rule 12(b)(6)." (Doc. 57 at 3.) However, Defendants did not develop this argument in any depth or attempt to explain why the factual allegations undergirding Claims One and Two lack plausibility. Accordingly, even though the Court harbors concerns about the ultimate viability of Claims One and Two, dismissal of those Claims is not warranted at this juncture. *Cf. United States v. Ramirez*, 448 Fed. App'x 727, 729 (9th Cir. 2011) ("Ramirez stated in conclusory terms that the district court violated his due process rights, but he did so in a single sentence without citation to authority. An undeveloped argument of this sort is waived."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.").

2. <u>Claim Three (Criminal Intelligence Systems Operating Policies)</u>

In Claim Three of the complaint, Plaintiffs allege that Defendants monitored their social media accounts and otherwise conducted surveillance without reasonable suspicion, in violation of the Criminal Intelligence Systems Operating Policies ("CISOP"), 28 C.F.R.

§ 23.20.  (Doc. 55 ¶¶ 357-363.)

Defendants move to dismiss this Claim on the ground that the regulation doesn't create a private right of action.  (Doc. 57 at 5-6.)  Plaintiffs respond that a private right of action may be implied because (1) the regulation was propounded to benefit plaintiffs, (2) nothing indicates that a private remedy wasn't intended, and (3) the corresponding statute allows for civil penalties if there is a violation, so "it would seem perplexing to . . . protect defendants and preclude a plaintiff from recovery."  (Doc. 61 at 9-10.)  Plaintiffs also request that the Court allow them to bring their claim under § 1983 to the extent the Court finds there is no private right of action under the regulation.  (*Id.*)  Defendants reply that the regulation is an "interpretive rule" and therefore doesn't create any substantive rights.  (Doc. 62 at 7-8.)

The Court agrees with Defendants.  A regulation interpreting a statute doesn't give rise to a private right of action unless the statute itself prohibits the conduct at issue.  *Alexander v. Sandoval*, 532 U.S. 275, 285-86 (2001) (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 173 (1994)) ("[A] 'private plaintiff may not bring a [suit based on a regulation] against a defendant for acts not prohibited by the text of [the statute].'").  This is because "private rights of action to enforce federal law must be created *by Congress*."  *Alexander*, 532 U.S. at 286 (emphasis added) (citation omitted).

Here, CISOP states: "A project shall collect and maintain criminal intelligence information concerning an individual only if there is reasonable suspicion that the individual is involved in criminal conduct or activity and the information is relevant to that criminal conduct or activity."  But the statute authorizing the regulation, 34 U.S.C. § 10231, doesn't contain such language.  It merely states that "[a]ll criminal intelligence systems operating through support under this chapter shall collect, maintain, and disseminate criminal intelligence information in conformance with policy standards which are prescribed by the Office of Justice Programs and which are written . . . to assure that such systems are not utilized in violation of the privacy and constitutional rights of individuals."

*Id.* § 10231(c). Because the statute does not create a private right of action, Plaintiffs cannot enforce any rights pursuant to the regulation.

Nor can Plaintiffs use § 1983 to bring a claim for violation of the regulation. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 935 (9th Cir. 2003) ("[A]n agency regulation cannot create individual rights enforceable through § 1983."); *Cooper v. City of Plano*, 2011 WL 4344183, *7 (E.D. Tex. 2011) ("Defendants also argue that Plaintiff cannot seek recovery under section 1983 for an alleged violation of the Code of Federal Regulations. The Court agrees. Therefore, any claim based upon any alleged violation of 28 C.F.R. § 23.20 should be dismissed."). Therefore, the Court dismisses Claim Three.

### 3. Claim Four (Hobbs Act)

In Claim Four of the complaint, Plaintiffs allege that Defendants violated the Hobbs Act, 18 U.S.C. § 1951, by engaging in various forms of improper conduct (*e.g.,* "overt surveillance, covert surveillance, computer stalking, negligence, [and] negligent supervision") that impaired Plaintiffs' "property" (*i.e.,* "the right to conduct their businesses, and the right to make business decisions and to solicit business free from wrongful coercion") and had effects on interstate commerce. (Doc. 55 ¶¶ 364-380.)

Defendants move to dismiss this Claim on the grounds that (1) the Hobbs Act doesn't create a private right of action and (2) the claim is "duplicative" of the § 1983 claim that is already asserted in Claim Seven of the complaint. (Doc. 57 at 2, 5-6.) Plaintiffs acknowledge that some district courts outside the Ninth Circuit have held there is no private right of action under the Hobbs Act but argue that "no applicable cases have been found in the District Court of Arizona or the Ninth Circuit" and that a private right of action may be implied. (Doc. 61 at 8-9.) Alternatively, Plaintiffs ask to amend their complaint to incorporate the Hobbs Act claim into their civil RICO claim (Claim Five) and their § 1983 claim (Claim Seven). (*Id.*)

Plaintiffs' arguments lack merit. There is an unbroken line of authority recognizing that "[t]he Hobbs Act is a criminal statute, and nothing in the language of the statute or the legislative history suggests that Congress intended to create a private cause of action.

Because there is no private cause of action, plaintiff cannot state a claim based on the Hobbs Act." *Addison v. Cal. Inst. for Men*, 2016 WL 8732476, *9 (C.D. Cal. 2016) (citations omitted). *See also Stanard v. Nygren*, 658 F.3d 792, 794 (7th Cir. 2011) ("The complaint also included a number of obviously frivolous claims; for example, a violation of the Hobbs Act (a criminal statute that does not provide a private right of action) . . . ."); *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408-409 (8th Cir. 1999) (holding that the Hobbs Act does not provide a private cause of action, noting that every court to consider the issue had so concluded, and gathering cases).

The Court also rejects Plaintiffs' request to amend their complaint to incorporate the Hobbs Act claim into their § 1983 and RICO claims. *Addison,* 2016 WL 8732476 at *9 (citation omitted) ("Plaintiff also cannot proceed by way of § 1983 based upon an alleged violation of the Hobbs Act because a § 1983 claim requires the plaintiff to assert the violation of a federal right, not merely a violation of federal law."); *see also* Part I(B)(4) *infra*. Thus, the Court dismisses Claim Four.

### 4. Claim Five (RICO)

In Claim Five of the complaint, Plaintiffs allege that Defendants violated the RICO statute, 18 U.S.C. § 1961 *et seq.* (Doc. 55 ¶¶ 381-426.)

Defendants first argue this Claim should be dismissed against the City because the City "is a governmental entity and is incapable of carrying out a criminal act or forming the necessary intent to support a RICO claim." (Doc. 57 at 4.) Defendants also argue it isn't plausible that the remaining Defendants engaged in any "racketeering activity" as defined by the statute. (*Id.*) In their response, Plaintiffs don't dispute that the City is incapable of forming criminal intent to support a RICO claim but argue they've stated a claim against the remaining Defendants by plausibly alleging two predicate offenses under the RICO statute: "mail fraud" and violations of the Hobbs Act. (Doc. 61 at 2-5.) Specifically, Plaintiffs claim that mail fraud can occur by "electronic communications" and contend they've alleged "the occurrence of various emails being sent to and from Defendants that include fraudulent misrepresentations." (*Id.* at 3-4.) Plaintiffs also argue

the complaint "alleges instances of assault, harassment, and intimidation by Defendants," "with the intention of interfering with [Humphreys'] business." (*Id.* at 4.) In their reply, Defendants dispute that mail fraud can occur via email, arguing "the mail fraud statute is to be carefully and strictly construed." (Doc. 62 at 2-3.) Defendants also contend the allegations in the complaint do not show they engaged in criminal activity. (*Id.* at 3-4.)

The Court agrees that Plaintiffs haven't stated a plausible RICO claim against the City. As conceded by Plaintiffs, "'government entities are incapable of forming [the] malicious intent' necessary to support a RICO action." *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996) (citation omitted).

Plaintiffs also haven't stated a plausible claim against the remaining Defendants for RICO violations. Under 18 U.S.C. § 1962(b), it is unlawful for a person, "through a pattern of racketeering activity," to "acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." *Id.* "Racketeering activity" "encompass[es] dozens of state and federal offenses" known as "predicates." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016). "These predicates include any act 'indictable' under specified federal statutes, as well as certain crimes 'chargeable' under state law, and any offense involving bankruptcy or securities fraud or drug-related activity that is 'punishable' under federal law." *Id.* (citations omitted). A predicate offense only implicates RICO when it's part of a "'pattern of racketeering activity'—a series of related predicates that together demonstrate the existence or threat of continued criminal activity." *Id.* at 2096-97.

Plaintiffs don't plausibly allege that Defendants have committed any crimes that constitute predicate offenses under the RICO statute. First, Defendants haven't committed "mail fraud" under 18 U.S.C. § 1341. Mail fraud occurs when a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008).

Contrary to Plaintiffs' contention, the mail fraud statute doesn't cover email

communications. The mail fraud statute is implicated only where mail is "sent or delivered by the Postal Service [or] . . . any private or commercial interstate carrier." 18 U.S.C. § 1341. Plaintiffs cite only one case, *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696 (6th Cir. 2000), to support their argument that emails are covered by the mail fraud statute. But Plaintiffs misrepresent that opinion. The Sixth Circuit stated: "Mail fraud *and wire fraud* are proven by showing a scheme or artifice to defraud combined with *either* a mailing or an electronic communication for the purpose of executing the scheme." *Id.* at 701 (emphases added). "[A] mailing" refers to mail fraud and "an electronic communication" refers to wire fraud. There's no support for the argument that email communications are covered by the mail fraud statute.

Dismissal is also warranted for the independent reason that the facts alleged don't create a plausible inference that Defendants "devised or intend[ed] to devise a scheme or artifice to defraud." *Bridge*, 553 U.S. at 647. Plaintiffs allege that various Defendants sent emails to each other containing falsehoods about whether Humphreys's businesses were conducting illegal activities and that certain Defendants spoke "disparagingly" about Plaintiffs. From these facts, it's not reasonable to infer that any of these Defendants intended to deprive Plaintiffs of any property interest through fraud. Therefore, it's implausible that Defendants were engaged in mail fraud.

Plaintiffs also fail to plausibly allege that Defendants have committed a violation of the Hobbs Act. That statute makes it illegal to "obstruct[ ], delay[ ], or affect[ ] commerce or the movement of any article or commodity in commerce" by "commit[ting] or threaten[ing] physical violence." 18 U.S.C. § 1951. Plaintiffs identify only one incident in which physical force occurred: "Defendant Blouir and the other two officers . . . used physical force and entered [Humphreys's business]." (Doc. 55 ¶ 195.) Even then, the physical force was in response to a telephone call in which a caller stated it "[l]ooked like [two men] were getting ready to . . . start fighting." (*Id.*) It's not plausible that Defendant Blouir had "a plan or purpose" to "obstruct[ ], delay[ ], or affect[ ] commerce." 18 U.S.C. § 1951. And Plaintiffs' numerous conclusory allegations that certain Defendants

committed "harassment" (*e.g.* Doc. 55 ¶¶ 52, 111, 137, 141) don't show that any Defendants were "commit[ting] or threaten[ing] physical violence." 18 U.S.C. § 1951.

For these reasons, Claim Five must be dismissed.

### 5. Claim Seven (§ 1983)

In Claim Seven of the complaint, Plaintiffs allege that Defendants violated "18 U.S.C. § 1983"[2] by subjecting them to "unlawful, egregious, constant, and continued surveillance" that was "based, in large part[,] on Plaintiffs['] Associations with Motorcycle Clubs" and had the effect of "depriv[ing] Plaintiffs of equal protection or equal privileges and immunities." (Doc. 55 ¶¶ 437-446.)[3]

Defendants argue this Claim must be dismissed to the extent it's being asserted against the City because the complaint doesn't allege a "policy, practice, or custom . . . [that is] a moving force" behind the alleged violation of Plaintiffs' constitutional rights, as required by *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). (Doc. 57 at 5.) Plaintiffs respond that there are instances in which a single decision by a municipal policymaker can impute liability to a municipality, such as where an official responsible for establishing final policy makes "a deliberate choice to follow a course of action . . . from among various alternatives." (Doc. 61 at 5.) Plaintiffs identify the chief of police, Defendant Malinski, as a final decision maker and point to communications where he allegedly detailed "discriminatory surveillance and harassment procedures." (*Id.* at 5-6.) Plaintiffs also allege that the City Manager is a final decision maker and that the City Manager failed to address complaints filed by Plaintiffs against City officials and employees. (*Id.* at 6.) These actions, Plaintiffs argue, are enough under *Monell* to subject the City to liability under § 1983. (*Id.*) Defendants reply that Plaintiffs merely allege the buzzwords of "unlawful" conduct, "discriminatory" surveillance, and "harassment" but

---

[2] Plaintiffs were presumably referring to 42 U.S.C. § 1983.

[3] As noted, other portions of the complaint assert claims for violations of the First Amendment (Claim One) and for violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment (Claim Two)—claims the Court construes as arising under § 1983. Accordingly, the Court construes Claim Seven as arising under the Privileges And Immunities Clause of the Fourteenth Amendment.

don't allege facts sufficient to plausibly draw such inferences. (Doc. 62 at 5-6.)

The Court will decline to dismiss Count Seven, as it pertains to the City, at this juncture. A single decision by a municipal policymaker can, in appropriate circumstances, subject a municipality to liability under § 1983. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Here, the complaint alleges, among other things, that the City's chief of police, Defendant Malinksi, personally ordered some of the challenged traffic stops (Doc. 55 ¶ 99), personally directed the City's police officers to conduct surveillance during the grand opening of one of Humphreys's businesses (*id.* ¶ 112), personally arranged for other law enforcement agencies to conduct similar surveillance (*id.* ¶ 117), and personally formulated "the enforcement plan for an event to be held inside of Plaintiff's business as well as targeted harassment for customers" (*id.* ¶ 137). Thus, the complaint isn't subject to dismissal under *Monell*.

The Court will note that Defendants' briefing on Claim Seven—similar to their briefing on Claims One and Two—contains a passing assertion that dismissal is warranted due to a lack of plausibility. (Doc. 57 at 3.) Because this argument is not developed, the Court will not consider it here. This result, however, should not be construed by Plaintiffs as some sort of tacit conclusion that their constitutional theories of liability (particularly their apparent claim under the Privileges and Immunities Clause of the Fourteenth Amendment) have merit.

Finally, Defendants argue that one of the four plaintiffs, Smith, shouldn't be allowed to assert a § 1983 claim arising from injuries to Humphreys and Humphreys's businesses because he cannot assert Humphreys's constitutional rights and he is not alleged to own either business. (Doc. 57 at 6.) Plaintiffs respond that Arizona is a community property state, so "any damage done to a business owned by Humphreys is necessarily damage to Plaintiff Smith." (Doc. 61 at 11.) Defendants reply that Arizona's community property laws don't eliminate the standing requirement that a plaintiff may only assert his own constitutional rights under § 1983. (Doc. 62 at 8-9.)

The Court isn't prepared to hold that Smith's ownership interest in Humphreys's

businesses, obtained by way of Arizona's community property laws, is insufficient as a matter of law to support a constitutional injury to Smith himself. Defendants haven't cited any case law in support of their position. Without providing more fully developed arguments with citations to law, Defendants haven't carried their burden. *In re Microsoft Partner Program Litig.*, 2006 WL 1348390, *6 (W.D. Wash. 2006) (citations omitted) ("It is well-established that 'under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated.'")

II. Motion to Stay

Because the Court has ruled on Defendants' motion to dismiss, the parties' joint motion to stay will be denied as moot.

\* \* \*

Accordingly, **IT IS ORDERED** that:

(1) Defendants' partial motion to dismiss (Doc. 57) is **GRANTED IN PART AND DENIED IN PART**.

(2) Claims 3, 4, and 5 are **DISMISSED**.

(3) The parties' joint motion to stay (Doc. 71) is **DENIED** as moot.

Dated this 24th day of January, 2019.

Dominic W. Lanza
United States District Judge